## NEWPORT COUNTY.

### STATE *vs.* JOHN L. O'BRIEN *et als.*

The clerk's minute book shows the names and residences of fifteen persons returned as drawn grand jurors. An indictment endorsed "a true bill," was signed by these fifteen.

*Held,* that the record sufficiently showed the number and names of the grand jurors and that they were all drawn jurors and not taken on a *venire.*

*Held,* further, that the record sufficiently showed the indictment to have been found and returned "a true bill," the indictment itself being properly considered a part of the record.

The indictment was found against John C. O'Brien and three others named. O'Brien pleaded *nolo contendere* and moved an arrest of judgment on account of a misnomer, his name being John L. O'Brien.

*Held,* that the defect, if a defect, could only be taken advantage of by a plea in abatement.

A joint indictment is also an indictment against each defendant separately.

INDICTMENT for larceny.  On motion in arrest of judgment.

*Providence, December* 24, 1892.  TILLINGHAST, J.  The defendant, John L. O'Brien, having pleaded *nolo contendere* to the indictment in this case charging him with the crime of larceny, now comes and moves in arrest of judgment, specifying a number of grounds therefor, which may be summarized as follows :  *First,* because the record does not show the number and names of the persons who served on the grand jury at the time the indictment purports to have been found; *second,* because it does not show that this particular indictment was ever found and returned, "*a true bill*" by the grand jury ; and *third,* because it nowhere appears in the record that John L. O'Brien, the defendant, was ever indicted for any offence.

An inspection of the minute book of the clerk of the court for the first day of the term at which said indictment was found, shows a list of the names and residences of the persons returned as grand jurors for the March term A. D. 1892, of said court.  Said list contains the names of fifteen persons so returned.  The said minute book for the second day of said term, shows that the grand jury were called and sworn, and charged by Mr. Justice Douglas, a member of this court, and that Alvin A. Barker was appointed foreman.  The names of the grand jurors who found the said indictment are indorsed thereon under the caption, "*a true bill.*"  The said minute book for the second day of said term also shows that the grand jury came in at 2.30 and reported, amongst others, the following indictment, viz :  *State* v. *Abram Pugesley, Edward F. Hughes, John C. O'Brien, Peter Habib.*  That on the eight day of said term said case was heard and John L. O'Brien filed a demurrer which was heard, and that he was allowed until June 11 to file briefs, and it appears from the docket entry in said case that on the tenth day of said term, June 28, John L. O'Brien, under indictment 2312, the number of the indictment in question, was arraigned and pleaded *nolo contendere,* sentence deferred.

A motion in arrest of judgment lies only for such errors as are apparent on the face of the record or for some matter

which ought to apear of record but does not. *United States* v. *Kilpatrick,* 16 Federal Reporter, 765; *State* v. *Lanier,* 90 N. Car. 714.

But the errors which would justify a motion of this sort must be errors of substance and not merely clerical or formal mistakes. According to Blackstone, "arrests of judgment arise from intrinsic causes appearing upon the face of the record." 3 Blackstone Comment. * 393.

As a general rule, any defect of substance which would be fatal on general demurrer, may be taken advantage of after verdict, by motion in arrest of judgment ; but judgment will not be arrested for defects in the proceedings which are merely formal. Such defects are amendable in this State under Pub. Stat. R. I. cap. 248, § 4. See 12 Amer. & Eng. Encyc. of Law, 147, and cases cited ; Wharton, Crim. Plead. & Pr. 8th ed. §§ 760–762 ; *State* v. *Paul,* 5 R. I. 185, 189 ; *State* v. *Corbett,* 12 R. I. 289, 293.

The plea of *nolo contendere* interposed by the defendant, like a demurrer, admits for the purposes of the case, all the facts which are well pleaded. That is to say, it is a confession of guilt, so far as this particular case is concerned, and places the defendant in the same position for the purposes of this motion, as though he had pleaded guilty, or been found guilty by the verdict of a jury. Such then being the law applicable to the case before us, we will proceed to consider whether the record submitted shows an indictment which could be sustained if a general demurrer had been filed thereto.

And first, does the said record show the number and names of the persons who served on the grand jury at the time the indictment purports to have been found ? The contention of the defendant is that it does not ; but that it simply shows that the grand jury were called and sworn, that Alvin A. Barker was appointed foreman, and that they were charged by the court, but that who they were and how many, does not appear. That it should contain their names for the purpose of showing whether they were drawn or *venire* jurors, as a *venire* man must have an additional qualification ; that

the defendant is entitled to know the name of every person who served on the grand jury, and he can only know this from the record, for if there were less than twelve or more than twenty three, it would be an illegal body, and he is entitled to know their names, for if a disqualified juror participated in the deliberations and finding, he has a right to plead in abatement, and that he is denied this right where the names do not appear in the record.

We think the said minute book does show the number and names of the persons who served on the grand jury at the time when the indictment was found. It contains the names and residences of fifteen persons returned as grand jurors for said term ; the indictment is indorsed by fifteen persons, including the name of Alvin A. Barker as foreman, and a comparison of the names on said indictment, with those on said minute book returned as grand jurors for said term, leaves no doubt that they represent the same identical persons. The statute fixes the number of grand jurors to be drawn for the county of Newport at fifteen, Pub. Laws R. I. cap. 836, § 1, of May 2, 1890. The minute book shows that this number of jurors were returned to said court, and the indictment in question shows that the same number participated in the finding thereof.

The defendant's contention therefore that he is entitled to know the name of every person who served on said grand jury is fully met by said record. That none of them were *venire* jurors also appears from the fact that said record shows that they were all regularly returned as drawn grand jurors. This is further evidenced also, from the fact that said record does not show that any *venire* was issued by said court for the purpose of obtaining additional jurymen, as it presumably would if such had been the fact. As to what is necessary to the sufficiency of the record in this regard, of a finding of an indictment, see 1 Bishop on Crim. Procedure, 3d ed. § § 666–668, and cases cited.

The second point made by the defendant, is that the record does not show that this particular indictment was ever found and returned "*a true bill*," by the grand jury. His specific

contention under this point, is that the record, independently
of the indictment ought to show that an indictment was pre-
sented against the defendant, that it was returned *"a true
bill,"* that it should set forth the offence with which he was
charged, and that all of these things should appear in the
record with the same particularity as is required in the record
of the verdict of a petit jury.

We do not think that this degree of strictness is required.
The indictment itself is a part of the record.   It was returned
by the grand jury *"a true bill,"* and it sets forth in apt
language the crime of larceny ; and we see no occasion for
encombering the record of the court with the fact that each
particular indictment was found and returned a true bill, by
the grand jury, and giving the names of the jurors who found
such bill in connection therewith.   No such particularity has
ever been observed in the courts of this State, so far as we
are aware, in keeping the records of the doings of the grand
jury, nor do we think it requisite that it should be.   *Turns*
v. *Commonwealth,* 6 Metc. 224, 232.   In *Mahon* v. *State of .
Ohio,* 10 Ohio, 233, which was a writ of error to the Court of
Common Pleas to reverse the judgment thereof on the ground
of defects in the record relating to the finding of an indictment,
and particularly because the names of the grand jurors who
found the bill, did not appear either in the caption, the in-
dictment or in any part of the record, the court said :   "It is
a well settled principle, in criminal pleading, that it must ap-
pear, in the caption of an indictment, that it was taken upon
oath, and that the names of all the jurors by whom taken
must be stated.   They may be set forth in the indictment
itself, but this is not usual.   1 Chitty on Crim. Law, 202 ;
Starkie on Crim. Plead. 261 ; 2 Hawkins Pleas of the Crown,
cap. 25, § 126.   In the king's bench, in making up the
record, it seems now not to be necessary to insert the names
of the grand jurors in the caption, *Aylett's* case in the House
of Lords, A. D. 1786 ; 1 Williams' Saunders, 248, note 1 ;
but it is necessary they should be returned in the *schedule.*
In this State, it is clear, if the names of the grand jurors do
not appear, at least, in some part of the record, a writ of

error will undoubtedly lie ; though it is probable that, on motion, a *certiorari* would be awarded, and the defect cured by the sending up of a new record. Clerical omissions, in criminal cases, are amendable at common law."

An examination of the cases cited by the defendant in support of his second point, fails to convince us that it is well taken.

The third and last point made by the defendant, is that it nowhere appears in the record that John L. O'Brien, the defendant, was ever indicted for any offence; that the record shows that an indictment was returned against one John *C.* O'Brien and others, but does not show any against this defendant whose name is John *L.* O'Brien.

We think it is quite too late for the defendant after entering a plea of *nolo contendere* to an indictment charging him, in his right name, with the crime of larceny, to claim that merely because of a clerical error in the minute book of the clerk, whereby his name appears to be "John *C.* O'Brien," instead of "John *L.* O'Brien," judgment against him should be arrested. Had he desired to take advantage of this defect, if indeed, it was a defect, see *State* v. *Feeny*, 13 R. I. 623, he should have done so by a plea in abatement for a misnomer, before pleading to the merits. Having failed to do so, the defect is waived. *State* v. *Drury*, 13 R. I. 540; 1 Bishop on Crim. Procedure, 3d ed. § 791, and cases cited; Wharton, Crim. Plead. & Prac. 8th ed. § 98, and cases cited in note 7, also § 761; *Commonwealth* v. *Beckley*, 3 Metc. 330.

The contention of the defendant that, because said indictment is against John L. O'Brien, *and others*, who are therein named as aforesaid, it is not therefore an indictment against him individually, is untenable. When several persons join in the commission of an offence, all, or any number of them may be jointly indicted therefor, or each of them may be indicted separately; but the fact that they are jointly indicted, renders the indictment none the less an indictment against each of them individually. See Wharton, Crim. Plead. & Prac. 8th ed. § 301, and cases cited; *Commonwealth* v. *Brown*, 12 Gray, 135 ; *Commonwealth* v. *Griffin*, 3 Cush. 523.

*The defendant's motion in arrest of judengmt is over-ruled.*

*Willard B. Tanner,* Assistant Attorney General, for the State.

*Clarence A. Aldrich & Patrick J. Galvin,* for defendant.