UNITED STATES, Appellee

v.

ROBERT DUPREE, Private E–1, U. S. Army, Appellant

1 USCMA 665, 5 CMR 93

No. 364

Decided September 9, 1952

LT. COL. Stewart H. Legendre, USA, and CAPT. John R. Sennott, USA, for Appellant.

LT. COL. Thayer Chapman, USA, and 1ST LT. Eugene L. Grimm, USA, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

The accused was convicted by general court-martial, sitting at Taegu, Korea, of wrongful possession of an opium derivative, in violation of the Uniform Code of Military Justice, Article 134, 50 USC § 728. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for four years. The convening authority approved the findings and sentence, and a board of review in the office of The Judge Advocate General, United States Army, affirmed without opinion. We granted the accused's petition that we might consider the issue of admissibility in evidence of a package containing a narcotic taken from the person of the accused. In view of our determination of this issue, it is unnecessary that we report the facts. However, we note the presence of ample evidence to support the findings of the court-martial.

II

It is to be observed at the outset that, although defense counsel objected at the trial to the introduction in evidence of the narcotic allegedly taken from petitioner's person, the objection was not based on a theory of unlawful search. The objection was, instead, directed to lack of proof to show that the substance contained in the package taken from the

accused's person was in fact a narcotic.[2] Therefore, we are confronted with the preliminary question of whether failure of petitioner to object on the basis of unlawful search at the trial is fatal to his subsequent effort to raise the matter on appeal.

In dealing with this problem, which, in basic nature is one of waiver, it is necessary that we inquire in some detail into the policy foundation for, and the characteristics and history of, the rule which excludes from evidence the product of an unlawful search. The rule in military law is derived from the Manual for Courts-Martial, United States, 1951, paragraph 152, which provides that evidence is inadmissible against an accused person if it is obtained as the result of an unlawful search of his property by persons acting under authority of the United States. This rule in turn is clearly derived from a similar principle obtaining in the civilian Federal courts. See Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, paragraph 152. We turn, therefore, to an examination of the rule as it is applied in the Federal courts of the civilian community.

### III

The policy basis of the Federal rule of exclusion lies in the Fourth Amendment to the Constitution, which provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." The exclusionary rule was first laid down in Weeks v. United States, 232 US 383, 58 L ed 652, 34 S Ct 341, and has since been applied rigorously by all Federal courts. Although it was derived originally from the Fourth Amendment, it appears today that it is a rule of evidence, based primarily on the desirability of providing a means for enforcing the protections afforded by the Amendment. Wolf v. Colorado, 338 US 25, 93 L ed 1782, 69 S Ct 1359; see Allen, Wolf Case: Search and Seizure, Federalism, and the Civil Liberties, 45 Ill L Rev 1 (1950); and Note, 35 Cornell L.Q. 625 (1950). It is important to note that at common law the seizure of evidence through improper or illegal methods bore no relation whatever to the question of its admissibility in evidence. Wigmore, Evidence, 3d ed., § 2183. The Federal rule of exclusion is not based on any concept having to do with unreliability of the evidence seized. Nueslein v. District of Columbia, 115 F2d 690 (CA, DC Cir) see People .v. Defore, 242 NY 13, 150 NE 585. It is also worthy of mention that, although the Supreme Court has held that the protections afforded by the Fourth Amendment are applicable to the states through the due process clause of the Fourteenth Amendment, the rule of exclusion is not mandatory in the criminal trials of the several states. Wolf v. Colorado, supra. Today only 16 North American states

<hr>

[2] The record on page 12 reflects the following colloquy:

"TC: (To LO) Subject to objection, the white box containing a match box marked Diamond Safety Match, together with a wad of white paper apparently written on by ink and pencil, I offer this as Prosecution's Exhibit 1.

LO: (To DC) Any objection?

DC: (To LO)˙ No objection to the introduction of the box.

TC: (To DC) I am offering the box and its entire contents.

DC: (To LO) We object to the contents of this box.

LO: (To DC) Overruled."

It will be observed that no ground for defense counsel's objection to the Exhibit's admission was assigned at the time it was offered in evidence. Nor was any such ground assigned at any other time. So far as can be ascertained from other parts of the record, the case for the accused in respect of the contents of the match box was based on two grounds: (1) Lack of proof that the substance was an opium derivative, and (2) Want of any showing of connection of the accused with the Exhibit. Certainly no reference whatever was ever made to the possibility that the package in question was secured from the accused through an unreasonable search and seizure. Defense counsel at the trial was an experienced captain of The Judge Advocate General's Corps, United States Army, and a member of the bar of this Court.

have adopted the Federal rule of exclusion.

The manner in which the rule is enforced, and the exceptions to its application, also shed light on its characteristics. First, the right to have evidence wrongfully seized excluded at the trial is a personal right, and must be asserted by the person whose privacy has been invaded. Kitt v. United States, 132 F2d 920 (CA 4th Cir) ; Goldstein v. United States, 316 US 114; Matthews v. Correa, 135 F2d 534 (CA2d Cir). The right to seek exclusion has been likened to a remedy provided for the victim of an unlawful search to compensate for the invasion of personal rights. Connolly v. Medalie, 58 F2d 629 (CA 2d Cir). See Comment, Judicial Control of Illegal Search and Seizure, 58 Yale LJ 144 (1948). The rule itself may be assimilated to that which excludes confessions obtained during illegal detention. McNabb v. United States, 318 US 332, 87 L ed 819, 63 S Ct 608. Or that which renders inadmissible evidence secured through wire tapping. Nardone v. United States, 308 US 338, 84 L ed 307, 60 S Ct 266. Finally, the rule of exclusion is applied only to Federal officers—that is, if the search is made by state officials it does not apply. Gilbert v. United States, 163 F2d 325 (CA 10th Cir).

From the foregoing principles and decisions several conclusions may be drawn. First, the rule of exclusion in Federal courts is primarily a rule of evidence, based on what are deemed sound policy considerations. Second, the rule has no relation to the reliability or trustworthiness of the evidence. Third, the rule is personal in nature, and must be asserted by the person whose rights have been infringed. Fourth, the rule is not applied universally, and is probably not commanded by the Constitution.

## IV

We turn next to a consideration of the rule of exclusion as it is applied in the field of military law. ▮▮▮▮▮ ▮ We recognize at the outset that the principle is nowhere made mandatory by the Uniform Code of Military Justice, 50 USC §§ 551–

736. Instead it is provided by the Manual for Courts-Martial, supra. Since it is derived from the Federal practice, it may be inferred that all—certainly most—of the restrictions imposed on its application in a civilian setting will be operative in the area of courts-martial procedure. The rule in the military, as in the Federal civilian law, has no relation to the trustworthiness of the evidence, and is personal in nature. We conclude, therefore, that this principle of Federal practice—military and otherwise—is nothing more nor less than an evidentiary rule of exclusion, provided for the protection of an individual's right to privacy in his personal property and effects. Finally and in summary, the rule confers on an individual the power to object at the trial to the reception in evidence of the products of an unlawful search. Does ▮▮▮▮ ▮ the failure to raise the objection waive the right? We think that it does.

In United States v. Masusock (No 15) 1 USCMA 32, 1 CMR 32, decided November 9, 1951, we established for the military practice a fundamental rule regarding the effect of failure to object at the trial upon the right to raise the issue on appeal. We noted there that we would not ordinarily consider an assignment of error based on inadmissibility of evidence where no objection was made at the trial. This rule was based in large part on the inescapable fact that this Court is in no position to reach a considered decision concerning the admissibility of evidence unless the collateral data necessary to a determination of the issue are brought out at the time of trial. There is even greater reason for the application of such a rule to the problem under consideration here than in the usual evidential situation. It will necessarily be impossible for this Court to decide whether a given search is unreasonable unless, at the trial, there is placed in the record all the facts and circumstances surrounding the search. Further, we are impressed by the fact that the rule of exclusion is in no way based upon the unreliability of the evidence. We do not find here, therefore, a situation where failure to treat the matter on ap-

peal might result in a conviction based upon untrustworthy evidence, such as might possibly obtain where documents are not properly authenticated, statements are concededly hearsay, or confessions are clearly involuntary. Finally, the rule, through policy and history, is calculated to protect a personal right. If the accused person involved, represented and advised by qualified counsel, does not desire to assert that right at the trial, then we perceive small reason for allowing it to be raised through afterthought on appeal.

It should be clear that we are not here concerned with rights of such an important and fundamental nature that a waiver is either not effective, or must be affirmatively and expressly shown. Cf. United States v. Welch (No. 196), 1 USCMA 402, 3 CMR 136, decided May 27, 1952; Johnson v. Zerbst, 304 US 458, 82 L ed 1461, 58 S Ct 1019; Powell v. Alabama, 287 US 45, 77 L ed 158, 53 S Ct 55, 84 ALR 527. The rule is not made applicable to military law by the Uniform Code of Military Justice, supra, and does not appear to be mandatory under the Constitition. See Wolf v. Colorado, supra.

We are not unmindful in this connection, of the argument advanced on occasion that the admission in evidence of the product of unlawful search violates the privilege against self incrimination—and we recognize that this privilege is protected by both the Constitution and the Uniform Code of Military Justice. It is conceded that there appears to be some support in the older Federal cases for the view that the rule of exclusion was based on the self incrimination provisions of the Fifth Amendment. Cf. Boyd v. United States, 116 US 616, 29 L ed 746, 6 S Ct 524; Nueslein v. District of Columbia, supra. However, this rationale has not appeared in recent Supreme Court decisions on the subject and there is ample ground for believing that this is no longer the law—if, indeed, it ever was. See Adams v. New York, 192 US 585, 48 L ed 575, 24 S Ct 372; Interstate Commerce Commission v. Baird, 194 US 25, 48 L ed 860, 24 S Ct 563; Hale v. Henkel, 201 US 43, 50 L ed 652, 26 S Ct

370; Haywood v. United States, 268 F 795 (CA 7th Cir); Wigmore, Evidence, 3d ed, § 2264; Allen, Wolf Case: Search and Seizure, Federalism, and the Civil Liberties, supra; Note, 35 Cornell LQ 625 (1950). Certainly, however, the privilege against self incrimination may be the subject of waiver. Moreover, even if an admixture of the Fourth and Fifth Amendments suggested the Federal rule of exclusion, the provisions of the Uniform Code regarding self incrimination make difficult, if not impossible, the importation of such a view into military law. The prohibition in Article 31 of the Code, 50 USC § 602, against receiving in evidence the product of a violation of the self incrimination provisions of that Article is limited to "statements," and thus can have no relation to demonstrative evidence.

V

Viewing the rule of exclusion in its true character, therefore, we conclude that failure to raise the question by appropriate objection at trial is fatal to a consideration thereof on appeal. It is apparent that the Federal courts have adopted the same rule. Originally, it was required that one offer a proper motion to suppress prior to trial to avail oneself of the rule of exclusion. See Garhart v. United States, 157 F2d 777 (CA 10th Cir): Weeks v. United States, supra. This rule was subsequently relaxed to permit the motion at trial, provided the fact of seizure was not known prior to that time. Gouled v. United States, 255 US 298, 65 L ed 647, 41 S Ct 261. Today the trial court may accept an application made for the first time at trial, and despite previous knowledge. Federal Rules of Criminal Procedure, Rule 41(4); United States v. Di Re, 159 F2d 818 (CA 2d Cir), aff'd 332 US 581, 92 L ed 210, 68 S Ct 222. Failure to raise the issue either prior to or during trial constitutes a waiver of the right. Morton v. United States, 147 F2d 28 (CA, DC Cir), cert den 324 US 875, 89 L ed 1428, 65 S Ct 1015; Butler v. United States, 153 F2d 993 (CA 10th Cir); Sellmayer Packing Co. v. Commissioner of Internal Revenue, 146 F2d 707 (CA 4th Cir). See Fraenkel, Recent Decisions in the Federal Law

of Searches and Seizures, 33 Ia L Rev 472 (1948). The same rule is applied in a majority of the American states which have adopted the Federal rule of exclusion. State v. Gunkel, 188 Wash 528, 63 P2d 376; People v. Saltis, 328 Ill 494, 160 NE 86; Robertson v. State, 94 Fla 770, 114 So 534; State v. Severns, 47 Idaho 246, 273 Pac 940; Hunt v. State, 216 Ind 171, 23 NE2d 681; State v. Slycord, 210 Ia 1209, 232 NW 636; McNutt v. State, 143 Miss 347, 108 So 721; Short v. State, 48 Okla Cr 320, 290 Pac 934.

We recognize that there may conceivably be extreme circumstances under which it will be necessary for this Court to consider an issue of unlawful search, regardless of whether it was properly raised below. For example, if the evidence at the trial disclosed a flagrant and outrageous violation of the rule proscribing unreasonable searches, then the exhibit should have been rejected by the law officer of his own motion. Thus we would be required to review his failure to do so in order to avoid a substantial miscarriage of justice. Similarly, if the accused was represented by palpably inexperienced counsel, and the facts necessary for determination of the issue fully appeared in the record, we might feel justified in permitting the question to be raised for the first time on review. See Rowe v. State, 120 Fla 649, 163 So 22; People v. Winchester, 352 Ill 237, 185 NE 580. It is sufficient to say that neither of these situations is present in the case at bar.

VI

In accordance with the views set out above, it is our decision that the accused here waived his right to assert the issue of unreasonable search in this Court by failing to raise proper objection at the trial. It is, therefore, unnecessary to consider the merits of contentions as to the unlawfulness of the search itself. The decision of the board of review is affirmed.

Chief Judge QUINN and Judge LATIMER concur.